IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL SINGLETON, Plaintiff, v. AT&T ENTERPRISES, ILLINOIS BELL TELEPHONE COMPANY, LLC, and AT&T INCORPORATED, Defendants. | Case No. 1:24-cv-12485 Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Michael Singleton ("Plaintiff") brings this action against Illinois Bell Telephone Company, LLC ("Illinois Bell"), AT&T Enterprises, and AT&T Incorporated ("AT&T Inc.") (collectively, "Defendants") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq.* ("ERISA"). Defendants partially move to dismiss under Rule 12(b)(6). [24]. For the reasons stated herein, Defendants' Motion to Dismiss [24] is granted-in-part and denied-in-part.

**I. Background**

The following factual allegations taken from the operative complaint [13] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiff worked as a technician for Defendants from 2000 to 2023. [13] ¶¶ 1, 14. Throughout his tenure, Plaintiff satisfactorily performed the essential functions of

1

his job and consistently met Defendants' expectations. *Id*. ¶¶ 2, 16. However, starting in 2022, Defendants began treating Plaintiff—an African American male—less favorably than his similarly situated coworkers. *Id*. ¶ 3. When Plaintiff complained about this unfair treatment, Plaintiff's supervisors made false noncompliance accusations against him, which triggered inquiries, suspensions, and unwarranted disciplinary action. *Id*. ¶ 4.

Defendants eventually terminated Plaintiff on December 12, 2023, citing allegations that Plaintiff was responsible for three workplace accidents within 5 years. *Id*. ¶¶ 5, 15, 53–54. Defendants did not, however, terminate Plaintiff's co-worker Trevino, despite both employees facing identical misconduct allegations. *Id*. ¶¶ 57–61, 76–77. At the time of his termination, Plaintiff was only a year-and-a-half away from vesting at a higher tiered pension, which would have increased his benefits from $140,000 to somewhere between $420,000 and $700,000. *Id*. ¶¶ 5, 19–21. By comparison, Trevino's pension had already vested at the higher tier. *Id*. ¶¶ 57–61, 77.

On December 4, 2024, Plaintiff filed this action against Defendants, alleging that Defendants' conduct constituted race discrimination under Title VII (Count I) and adverse interference with his employee benefits under ERISA (Count II). [1]. Plaintiff filed his operative Amended Complaint on February 21, 2025. [13]. On April 28, 2025, Defendants partially moved to dismiss the Amended Complaint. [24].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and

2

raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

3

Defendants move to dismiss Count I with respect to AT&T Enterprises and AT&T Inc. and Count II in its entirety or, alternatively, with respect to just AT&T Enterprises and AT&T Inc. The Court addresses each count in turn.

### A. Count I: Discrimination Under Title VII

Defendants argue that Count I must be dismissed with respect to AT&T Enterprises and AT&T Inc. because Plaintiff failed to sufficiently allege an employer relationship with those entities. The Court agrees.

"Only an employer can be liable under Title VII." *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 448 (7th Cir. 2023). While this rule typically confines Title VII claims to suits against an employee's "direct" employer, a plaintiff can still "under certain limited circumstances, bring a claim against a defendant who is not his direct employer." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). An affiliated corporation can be considered an employer under Title VII, in addition to the direct employer, if the affiliate "directed the discriminatory act, practice, or policy of which the employee is complaining." *Betts v. Option Care Enters., Inc*, No. 18-CV-4023, 2019 WL 193914, at *5 (N.D. Ill. Jan. 15, 2019) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008)); *see also Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001). A defendant may also be considered a "de facto or indirect employer" if the defendant "controlled the plaintiff's employment relationship." *Betts*, 2019 WL 193914, at *5 (quoting *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995)); *see also Love*, 779 F.3d at 702 (explaining that the

4

five-factor *Knight* test applies to analyze whether a putative employer exercised sufficient control).

Here, Plaintiff does not dispute that AT&T Enterprises and AT&T Inc. were not his direct employer. Consequently, to proceed with his Title VII claim against those entities, he must show they were his employers based on some indirect theory of liability. Yet Plaintiff's Amended Complaint fails to do so. It does not allege that AT&T Enterprises and AT&T Inc. "directed" the purported racial discrimination against Plaintiff. Nor does it allege that AT&T Enterprises and AT&T Inc. exercised "control" over Plaintiff's employment relationship. The Amended Complaint merely alleges in a conclusory fashion that AT&T Enterprises and AT&T Inc. were Plaintiff's employers. This is insufficient.

Resisting this conclusion, Plaintiff's response brief identifies two[1] supplemental documents to support Title VII liability against AT&T Enterprises and AT&T Inc. The first is a Collective Bargaining Agreement ("CBA") that Illinois Bell and AT&T Corporation (AT&T Enterprises' predecessor) entered into with Plaintiff's union. Plaintiff contends the CBA plausibly shows that AT&T Enterprises controlled his employment and directed the discriminatory acts against him. The second is

---

[1] Plaintiff's response brief also points to AT&T Inc.'s 2023 Form 10-K, which purportedly shows AT&T Inc. as a guarantor for Illinois Bell. The Form 10-K, however, is extrinsic to the Amended Complaint and cannot be considered on a Rule 12(b)(6) motion. It is also axiomatic that a plaintiff cannot amend his complaint in a response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Moreover, even if the Court were to consider the Form 10-K, such an allegation alone does not suggest that AT&T Inc. controlled Plaintiff's employment relationship or directed the alleged discrimination.

5

Plaintiff's retirement plan description, which lists AT&T Inc. as the plan sponsor. Plaintiff similarly argues this plausibly shows AT&T Inc.'s control over his employment and responsibility over the purported discrimination. Though these documents are not part of the Amended Complaint, the Court may still consider them. *Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1019–1020 (7th Cir.2013) (a court may consider "documents that are critical to the complaint and referred to in it" on a motion to dismiss). Neither, however, moves the needle. As to the CBA, the Court agrees with Defendants that mere participation in a multi-employer CBA does not imply cross-employer control or responsibility for discrimination by another employer. Though Plaintiff contends the CBA's "Employee" definition says otherwise, Plaintiff offers no reason for applying this definition outside the collective bargaining context. Nor has Plaintiff addressed the fact that Illinois Bell and AT&T Corporation are listed in the CBA as part of separate employment groups: Illinois Bell in "AT&T Midwest" and AT&T Corporation in "AT&T National." [25], Ex. C at 9. As to the plan description, while this may suggest AT&T Inc.'s control over the administration of Plaintiff's retirement plan, it alone likewise does not suggest control over Plaintiff's employment relationship or that AT&T Inc. somehow directed the alleged discriminatory acts against Plaintiff. *See e.g., Shah v. Littelfuse Inc.*, No. 12 CV 6845, 2013 WL 1828926, at *4 (N.D. Ill. Apr. 29, 2013) ("[a] plaintiff cannot maintain a valid Title VII claim against a defendant based solely on the defendant's involvement in administrative tasks related to the plaintiff's employment.").

Though the Court recognizes that determining Title VII employer status is fact-intensive and generally requires discovery, a plaintiff must still plead sufficient facts to support a theory that a defendant directed the purported discriminatory conduct or exercised enough control to qualify as a Title VII employer. *Claussen v. Muchowski*, No. 21 CV 05316, 2022 WL 4465931, at *4 (N.D. Ill. Sept. 26, 2022). The Amended Complaint fails to do so here.

### B. Count II: Interference Under ERISA

Defendants argue that Count II must be dismissed because Plaintiff has not alleged sufficient facts to establish that (1) he was discharged with a specific intent to interfere with his pension rights, and (2) he exhausted his administrative remedies before bringing this suit. Defendants alternatively argue if this Court does not dismiss Count II in its entirety, at least AT&T Enterprises and AT&T Inc. should be dismissed from Count II. The Court addresses each argument in turn.

#### a. Failure to Plead Specific Intent

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant in an employee benefits plan … for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014) (quoting 29 U.S.C. § 1140). Liability under § 510 requires a "*specific intent* to violate the statute and to interfere with an employee's ERISA rights." *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 668 (7th Cir. 2008) (emphasis in the original). A plaintiff must

therefore allege sufficient facts from which one could plausibly infer that the "intent to frustrate the attainment of benefits [was] at least a motivating factor for the adverse action against the [plaintiff]." *Teamsters Loc. Union*, 741 F.3d at 826; *see also Norrell v. Jeff Foster Trucking, Inc.*, No. 18-CV-443-JDP, 2018 WL 5619200, at *4 (W.D. Wis. Oct. 30, 2018).

Viewing the allegations in Plaintiff's favor, the Amended Complaint sufficiently establishes a plausible claim that Defendants acted with specific intent to interfere with his pension rights. Plaintiff alleges he was subject to increased disciplinary actions roughly two years before his higher tier pension vested. [13] ¶¶ 5, 26–50. These disciplinary actions came out of the blue as Plaintiff had been satisfactorily performing the essential functions of his job for roughly 23 years. *Id*. ¶¶ 2, 16. Plaintiff was then terminated a year-and-a-half before his higher tier pension vested. *Id*. ¶ 5. Yet Plaintiff's co-worker Trevino—whose higher tier pension had already vested—was not terminated even though Trevino had been accused of the same misconduct as Plaintiff. *Id*. ¶¶ 57–61, 76–77. Taken together, these allegations raise a plausible inference that Defendants fired Plaintiff to save the roughly $280,000 to $560,000 they would have owed him had they kept Plaintiff employed until his higher tiered pension had vested.

Defendants' arguments to the contrary are unpersuasive. The Court first notes that Defendants[2] recite the incorrect standard. A plaintiff does not need to plead a

---

[2] Though Plaintiff also misstates the standard, on a motion to dismiss, Defendants have the burden of demonstrating the legal insufficiency of the Amended Complaint – not Plaintiff or the Court. *Yeksigian v. Nappi*, 900 F.2d 101, 104–105 (7th Cir.1990).

8

prima facie case of ERISA interference. *Chung v. Arthur J. Gallagher & Co.*, No. 21-CV-01650, 2023 WL 5486954, at *3 (N.D. Ill. Aug. 24, 2023) (analogizing ERISA interference to employment discrimination and explaining that "complaint need not plead specific facts establishing a prima facie case."). This is because a prima facie case is an evidentiary standard, not a pleading requirement. *Pettye v. Santander Consumer, USA, Inc.*, No. 05 C 4629, 2016 WL 704840, at *5 (N.D. Ill. Feb. 23, 2016). Instead, "[t]he pleading standard [for ERISA interference] is quite low, even after *Twombly* and *Iqbal*." *Chung*, 2023 WL 5486954, at *2. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Amended Complaint meets this lax standard. It lays out the grounds upon which Plaintiff bases his specific intent allegation: after 23 years of working for Defendants, he was fired under questionable circumstances shortly before his higher tiered pension vested while a similarly situated co-worker who had already vested was not fired. Demanding anything more would be akin to asking Plaintiff to prove a prima facie case at the pleading stage. That is not necessary. *Deka v. Countryside Ass'n for People With Disabilities, Inc.*, 140 F. Supp. 3d 698, 706 (N.D. Ill. 2015) ("Plaintiffs need not plead the elements of a prima facie case to survive a motion to dismiss.")

This incorrect standard permeates throughout Defendants' arguments. Defendants, for instance, rely on *Lindemann v. Mobil Oil Corporation*, 141 F.3d 290, 296 (7th Cir. 1998) and *Hendricks v. Edgewater Steel Co.*, 898 F.2d 385, 390 (3d Cir.

9

1990) for the proposition that this Court cannot rely on the length of time between Plaintiff's termination and his pension vesting date when looking at specific intent. But *Lindemann* and *Hendricks* were decided on a summary judgment, where a prima facie case is required and a plaintiff must thus set forth sufficient evidence of intent to prevail. The same issue affects Defendants' reliance on *Turner v. Schering-Plough Corp.*, 901 F.2d 335 (3d Cir. 1990), *Gardner v. Illinois Preferred Real Est., LLC*, No. 05 C 4629, 2006 WL 3490429 (N.D. Ill. Dec. 4, 2006), and *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131 (7th Cir. 1997). And while *Rowlands v. United Parcel Serv. Inc.*, No. 1:13-CV-59 RLM, 2015 WL 738296 (N.D. Ind. Feb. 19, 2015) and *Cella v. Lilly USA LLC*, No. 1:24-CV-00814-TWP-MKK, 2025 WL 460953 (S.D. Ind. Feb. 11, 2025) involved motions to dismiss, the Court agrees with Plaintiff that Trevino not being fired is a distinguishing factor that pushes Plaintiff's ERISA interference claim from speculation into the realm of plausibility. Though Defendants argue this fact also undermines Plaintiff's position, at this stage in the proceedings, this Court "must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

In sum, Plaintiff's allegations are not mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" considered insufficient by *Twombly*. *Sevugan*, 931 F.3d at 614. Rather, considering the totality of the circumstances in the Amended Complaint, and accepting all the allegations as true, Plaintiff has sufficiently alleged a pattern of conduct by Defendants from which one could

reasonably infer that Defendants' actions were "at least" motivated by an intent to interfere with his pension rights. *Teamsters Loc. Union,* 741 F.3d at 826.

### b. Failure to Plead Exhaustion

Defendants also seek dismissal of Count II on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing this action. The Seventh Circuit has held that exhaustion of administrative remedies is a prerequisite to suing under ERISA. *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012). However, because failure to exhaust administrative remedies is an affirmative defense, it cannot provide a basis for a motion to dismiss unless the plaintiff pleads himself out of court. *Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 807–08 (N.D. Ill. 2007) (citing *Salas v. Wis. Dep't. of Corr.*, 493 F.3d 913, 921–22 (7th Cir. 2007)).

A careful reading of the Amended Complaint reveals that Plaintiff has not pled himself out of court. Paragraph 79 of the Amended Complaint states that Plaintiff exhausted all available administrative remedies and paragraph 80 notes that, in the event Plaintiff did not, exhaustion would have been futile. At no point does Plaintiff affirmatively state that he failed to exhaust available administrative remedies. Although Plaintiff mentions futility—which by itself would suggest that Plaintiff did not exhaust administrative remedies—that statement is qualified by Plaintiff's allegation of exhaustion. The burden thus remains on Defendants to prove their affirmative exhaustion defense. Dismissal is inappropriate at this stage.

### c. Dismissal as to AT&T Enterprises and AT&T Inc.

11

As an alternative to complete dismissal, Defendants argue that AT&T Enterprises and AT&T Inc. should be dismissed from Count II. The basis for Defendants' argument, however, is unclear as Defendants provide the Court with nothing but a string-cite. [25] at 9. The Court can nonetheless think of two possibilities. First is that, like Count I, Defendants believe that Plaintiff has not alleged sufficient facts to establish that AT&T Enterprises and AT&T Inc. were his "employers." Second is that Defendants believe that Plaintiff has not alleged sufficient facts to establish that AT&T Enterprises and AT&T Inc. can be held responsible, under an alter-ego or veil-piercing theories, for the actions of Illinois Bell.

Both arguments miss the mark. Unlike Title VII, interference claims under Section 510 of ERISA do not require the existence of an employment relationship. *Teamsters Loc. Union*, 741 F.3d at 827. This is because the statute restrains "'any person,' not just employers." *Id*. (quoting 29 U.S.C. § 1140). Thus, non-employers can be held independently liable under Section 510 of ERISA so long as a plaintiff alleges that the non-employers engaged in prohibited acts other than unlawful dismissal. *Id*.

Here, Plaintiff alleges that all Defendants engaged in adverse actions against him, including revoking his work vehicle privileges, suspending him, denying him unemployment benefits, and eventually terminating him. [13] ¶ 75. The acts of suspending and disciplining are prohibited under Section 510 of ERISA. 29 U.S.C. § 1140. Therefore, liability for AT&T Enterprises and AT&T Inc. can independently attach regardless of whether those entities directly employed Plaintiff and regardless of whether those entities can be held responsible, under alter-ego or veil-piercing

12

theories, for the actions of Illinois Bell. To be sure, other arguments could have been raised as to why AT&T Enterprises and AT&T Inc. should be dismissed from Count II. But this Court is under no obligation to construct Defendants' arguments for them. *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) ("This court has no duty to research and construct legal arguments available to a party.").

### IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [24] is granted-in-part and denied-in-part. Count I is dismissed without prejudice as to Defendants AT&T Enterprises and AT&T Inc. Defendants' request to dismiss Count II is denied. The Court will allow Plaintiff to file a second amended complaint on or before December 9, 2025 if he can cure the deficiencies as discussed in this order.

E N T E R:

Dated: November 18, 2025

MARY M. ROWLAND
United States District Judge